**SO ORDERED.**

**SIGNED this 21st day of December, 2009.**

_____
**LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court
**Western District of Texas
San Antonio Division**

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| FIESTA INN & SUITES, LP | 09-51355-C |
| *DEBTOR* | CHAPTER 7 |

### MEMORANDUM DECISION AND ORDER DENYING MOTION FOR STAY PENDING APPEAL

CAME ON for consideration a motion by Charles R. Bomba for stay pending appeal. The order from which the appeal is taken was this court's order adjudging Mr. Bomba in contempt and assessing a judgment in the amount of $160,000, payable to Community South Bank, the creditor whose cash collateral this court found was dissipated in violation of court orders and in violation of section 363(c) of title 11. The order from which the appeal was taken was entered as docket number 51, entered on July 14, 2009. However, the order containing the actual judgment was not entered until August 17, 2009, at docket number 59. No appeal was taken from that order.

It is unclear from which order Bomba seeks stay relief. However, the court will treat the appeal as being an appeal from both orders. Bomba thus seeks relief from the judgment pending his

appeal. It is not clear why Bomba has waited until this late date to request relief, it being some four months after the entry of the order constituting the judgment. However, Rule 8005 of the Federal Rules of Bankruptcy Procedure does not appear to set any deadlines for the presentation of a motion for stay pending appeal, nor is the court evidently divested of jurisdiction to consider such motions even though the appeal has been perfected, the record transmitted, and the appeal docketed with the district court. *See In re Ridgemont Apartment Associates, Ltd.*, 93 B.R. 788, 790 (Bankr. N.D.Ga. 1988); FED.R.BANKR.P. 8005.

In his motion, Bomba does not offer to post a supersedeas bond. He does not offer any explanation for why he fails to do so, though he claims that he cannot afford counsel, an indirect plea to poverty. He explains that "While it may not serve the purpose of depriving the appellant of livelihood [sic], the granting of a stay herein would allow the parties to the appeal to complete the appeal process on as equal a footing as possible under the law." He adds, "Appellant [meaning appellee, Community South Bank] has foreclosed upon its property and is [in] possession, and upon information and belief has disposed of the property of the Debtor; there is no danger of loss or damage to the Appellant [sic] if this stay may be granted."

Bomba explains that "a stay pending appeal is sought to allow the appellant to complete the appeal process, to expend time and effort required to comply with the District Court's Orders and to be available to respond to Appellee's pleadings in pursuit of terminating the appeal process without further consideration by that Court." He does not explain how a stay of execution on the judgment contributes to the achievement of these ends. However, he does add that "without a stay, Appellee is certain to continue efforts to prevent the appeal from going forward by seeking to collect all and any funds which may be sued to comply with the District Court's directives or to allow appellant to continue to prepare and file necessary documents to complete the appeal process."

Apparently, then, Bomba is concerned that his appeal will be rendered moot by the efforts of Appellee to collect on the indebtedness.

The standards for granting stays pending appeal are well-established. Ordinarily, a stay from a money judgment would be obtained as of right by the filing of a supersedeas bond. *See* FED.R.BANKR.P. 7062(a); *see also In re Havens Steel Co.*, 2005 WL 562733 (W.D.Mo. 2005). However, when no supersedeas bond is obtained, a court has substantial discretion under Rule 8005 to grant (or deny) a stay pending appeal on such terms as it may deem appropriate, subject to an abuse of discretion standard of review. *In re Target Graphics, Inc.*, 372 B.R. 866 (E.D.Tenn. 2007). In considering such relief, the court is to be guided by criteria substantially similar to those used for preliminary injunctions: (1) the likelihood of success on the merits, (2) the likelihood of irreparable harm, (3) harm to others, and (4) whether the public interest will be served. *Id.*, at 870. In addition, a court may consider other factors and fashion relief that may be uniquely suited to the special needs of an ongoing bankruptcy case. *See In re Gleasman*, 111 B.R. 595, 599 (Bankr. W.D.Tex. 1990), *citing In re Charles & Lillian Brown's Hotel, Inc.*, 93 B.R. 49 (Bankr. S.D.N.Y. 1988).

With regard to the first element, likelihood of success on the merits, a movant need only present a substantial case on the merits when a serious legal question is involved, coupled with a showing that a balancing of the equities weighs heavily in favor of granting a stay. *Arnold v. Garlock, Inc.*, 278 F.3d 426, 439 (5th Cir. 2001); *accord In re Texas Equip. Co., Inc.*, 283 B.R. 222, 227 (Bankr. N.D.Tex. 2002). In this case, a serious question of law is indeed involved – may a court assess a judgment against debtor's counsel for that counsel's role in either permitting or counseling a client debtor to use cash collateral in violation of the prohibitions on such use in section 363(c) of the Bankruptcy Code.[1]

---

[1] The court states the issue as it appears to the court, not as perhaps stated by appellant.

The court is less certain that a balancing of the equities favors appellant, however. No bond was ever posted by the appellant, yet appellant seems to believe that no harm could befall appellee because, in Bomba's words, "there is no danger of loss or damage to the Appellant [sic, appellee]." But the danger of loss to an appellee who holds a money judgment is straightforward – collection efforts are suspended against the judgment debtor who is then free to dispose of property or otherwise alter his ability to respond in damages. Appeals are not a matter of right. They are a privilege that ordinarily comes with a cost – usually the posting of a bond. Appellant asks the court to transfer risk of loss to the appellee, who prevailed below, while appellant pursues his appeal. There is no equitable reason that this court knows of shifting risk of loss from the appellant, solely because the appellant wants to test the legal issues raised by the judgment. Equity would normally demand that the privilege of appeal be purchased for the price of a bond that secures the judgment in favor of the appellee in the event the appeal is unsuccessful.

With regard to the question of irreparable injury, Bomba has given the court little with which to work. Reading the motion most generously to the movant, however, the irreparable injury to which Bomba refers is the loss of his ability to pursue this appeal, or the appeal being rendered moot. A "majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm." *In re Adelphia Communications Corp.*, 361 B.R. 337, 347 & n.39 (S.D.N.Y. 2007) (Kaplan, D.J.), *quoted by In re General Motors Corp.*, 409 B.R. 24, 31 (Bankr. S.D.N.Y. 2009) (Gerber, B.J.). Still, Judge Gerber acknowledged that the threat of equitable mootness, while not decisive, would "satisfy the requirement of showing *some* irreparable injury – enough to get on the scoreboard with respect to this issue." *General Motors*, 409 B.R. at 31. Given the Fifth Circuit's recent observations regarding equitable mootness in the context of stays pending appeal, *see In re Pacific Lumber Co,* 584 F.3d 229, 242 (5th Cir. 2009), this court is inclined to follow Judge Gerber's

cautious approach. The ultimate collection of the judgment from Bomba would seem to render any reversal by an appellate court as equitably moot, as the unstayed judgment creditor would be acting within its rights to collect on the unstayed judgment, and no rule of law would compel the return of any monies received notwithstanding an appellate court's later reversal of the judgment.

We have already looked at a balancing of the equities in this case. They substantially favor the appellee Community South Bank. It was that bank's collateral that was exhausted. It is that bank that is now out of the money for $160,000. All that the bank now holds in place of those lost funds is a judgment that gives the bank nothing more than the right to try to collect the funds from the party this court has ruled is jointly and severally responsible for the loss the bank incurred. Yet it is the appellant here who now wants to stay the bank's efforts to finally collect the monies it lost, so that the appellant can contest the legal basis for this court's ruling. It seems to this court that equity requires that the appellant post a bond for the privilege of imposing further delay on the bank's efforts to recover the monies it lost as a result of the actions of the debtor and the debtor's counsel in this bankruptcy process. The equities certainly do not favor the wrongdoer, in this court's view.

The final element under *Arnold* is public policy. The court adverted to the important public policy that drove its decision to impose liability on counsel in the first instance – Congress' clear directive that debtors in bankruptcy are statutorily enjoined from using funds that constitute cash collateral of a creditor. *See* 11 U.S.C. § 363(c)(2); *see In re Aerosmith Denton Corp.*, 36 B.R. 116 (Bankr. N.D.Tex. 1983) (Brister, B.J.).[2] Bankruptcy imposes substantial risks on secured creditors

---

[2] Here is what Judge Brister said:

> It is true that there are no apparent provisions of the Code which specifically provide sanctions for the failure of the debtor to comply with "cash collateral" requirements. However § 105(a) of the Code gives to the Bankruptcy Court the power to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. Regardless of debtor's argument that § 105 was not intended to confer the power to create lien rights the Court does have an obligation to carry out the intent of Congress

as it is. The automatic stay prevents enforcement against collateral. Section 506(a) bifurcates the secured creditor's claim, limiting it to the value of the underlying collateral. Sections 1325(a)(5) and 1129(b)(2)(A) permit repayment of that claim over time at an interest rate set by a court. These are substantial impositions on secured creditors' rights, but they are deemed justified by the larger role that bankruptcy is intended to play in the economy – permitting the restructuring of enterprises and their finances. Given these substantial inroads on the rights of secured creditors, when Congress draws a line in the sand with regard to an absolute boundary on the extent of imposition that may be imposed on a secured creditor, as it has in section 363(c)(2), it is imperative that all the players in the process take that limitation seriously. If there is no penalty for crossing that boundary, then that boundary will be crossed with impunity. Section 105(a) gives this court the power to prevent that unsavory result. Granting a stay without bond only exacerbates the injury caused by the debtor's improperly violating the stricture against use of cash collateral, an outcome that this court believes is contrary to public policy.

It is true that Rule 8005 gives the court the power to fashion appropriate relief even when the debtor has not filed a supersedeas bond, but that flexibility is normally employed for orders that do not involve a monetary award. *See, e.g.*, *In re Adelphia Communications Corp.*, 361 B.R. 337

---

in its enactment of the Bankruptcy Code. As mentioned above the continuation of lending transactions between the business community on the one hand and lending institutions on the other require that liens negotiated in good faith and for which full consideration has been given must be protected. Adoption of the theory advanced by the debtor that there are no applicable sanctions, so that a valid lien of a creditor is recognized by the Court but both the Court and the creditor are powerless to preserve and protect that lien after bankruptcy has been initiated, will result in anarchy. That cannot be the result intended by Congress. Therefore I have interpreted § 105(a) of the Code as giving to the Court the power and the duty to do those things which are reasonably required to protect the Court's jurisdiction and to carry out the intent of Title 11.

*Aerosmith Denton*, 36 B.R,, at 118. This court agrees that section 105(a) is the tool that Congress gave the courts to craft appropriate relief in circumstances such as this – a clear directive, but uncoupled to a clear remedy. The court appreciates that section 105(a) is not, in the Fifth Circuit's words, a "roving commission to do equity." However, it is also not a dead letter. The statutory grant is there for good reason. Giving effect to the strict prohibition stated in section 363(c)(2) is, in this court's view, one of those "good reasons."

(S.D.N.Y. 2007) (chapter 11 confirmation order); *In re Tubular Technologies, LLC*, 348 B.R. 699 (Bankr. D.S.C. 2006) (order denying motion to extend time to assume or reject lease of nonresidential real property); *In re Gleasman*, *supra* (order lifting automatic stay). In such cases, a supersedeas bond is often inapposite. Also, courts may be called upon to craft unique relief in order to permit the appeal to proceed without jeopardizing the progress of the underlying bankruptcy case. *See Gleasman*, *supra.* This is not such a case however. Here, the court entered a money judgment against an attorney. Neither the collection of that award nor the reversal of that award will have any impact at all on the underlying bankruptcy case, which is currently a chapter 7 liquidation.

If a party fails to satisfy any one of the four requirements for a stay pending appeal, then the court will be acting within its discretion to deny the stay. *See In re Dakota Rail, Inc.*, 111 B.R. 818, 820 (Bankr. D.Minn. 1990). Here, the moving party has failed to persuade this court that either a balancing of the equities or public policy favor granting a stay pending appeal. Indeed, the court is not satisfied that the element of irreparable harm is entirely satisfied, though there is some evidence on the point (the court presuming the *bona fides* of the representations in the appellant's motion). Of course, the appellant is free to present his case to the district court, which may have a different view of the matter. This court, however, denies the motion for the reasons stated in this decision.

# # #